UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNA SCHIEWE, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:16-cv-05453 |
| MIRAMED REVENUE GROUP, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

**COMPLAINT FOR RELIEF PURSUANT
TO THE FAIR DEBT COLLECTION PRACTICES ACT**

NOW COMES the Plaintiff, ANNA SCHIEWE ("Plaintiff"), by and through her attorneys, Consumer Law Partners, LLC ("CLP"), complaining of MIRAMED REVENUE GROUP, LLC ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") for Defendant's unlawful collection practices.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the FDCPA and TCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

1

## PARTIES

4. Plaintiff is a 71 year old natural person residing at 445 South Walnut, Bensenville, Illinois, which falls within the Northern District of Illinois.[1]

5. Plaintiff is a "consumer" as defined by §1692a(3) of the FDCPA.

6. Plaintiff suffers from a variety of physical issues including diabetes and heart problems.

7. Defendant, "an affiliate of MiraMed Global Services, Inc., is an all-encompassing resource for healthcare financial services. We are an experienced and successful healthcare collection agency providing primary and secondary bad debt collection services. Our ability to maximize recoveries is without equal in the industry."[2] From its headquarters at 991 Oak Creek Drive, Lombard, Illinois, Defendant is in the business of collecting consumer debts for others, including medical debts allegedly owed by Plaintiff.

8. Defendant is an Illinois corporation that is registered with the Illinois Secretary of State under file number 02109433.

9. Defendant is a "debt collector" as defined by §1692a(6) of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

10. On its correspondences, Defendant identifies itself as a debt collector.

## FACTS SUPPORTING CAUSES OF ACTION

11. Due to her health conditions, Plaintiff has incurred a number of financial obligations to various medical providers including Northwestern Memorial Hospital ("Northwestern").

12. On August 14, 2016 and August 25, 2016, Plaintiff received medical care from Northwestern related to her heart conditions.

---

[1] Plaintiff is currently in and out of rehabilitation homes, located within the Northern District of Illinois, related to recovery from her recent heart surgery. The address listed is her primary residence.
[2] http://www.miramedgs.com/about?id=16

13. Lacking income, Plaintiff was not able to pay Northwestern for her medical care, specifically serves related to account numbers 707664061 and 400305707 ("subject consumer debts"). Plaintiff's lack of payment on the subject consumer debts caused her to default on the obligations to Northwestern.

14. Upon information and belief, Northwestern turned the collection of the subject consumer debts over to Defendant after Plaintiff's default.

15. After receiving placement of the subject consumer debt, Defendant began engaging in collection activity towards Plaintiff.

16. Concerned by Defendant's collection activity and knowing that she would not be able to pay the subject consumer debts, Plaintiff engaged the services of CLP.

17. On or around March 22, 2016, CLP faxed Defendant a correspondence requesting validation of the subject consumer debts. *See* attached Exhibit A is a true and correct copy of the correspondence sent to Defendant by CLP.

18. The validation correspondence that Defendant received included a provision which stated, "Also, pursuant to 15 U.S.C. §1692c(a)(2), CLP demands that your office immediately cease any and all direct contact with our Client. We also request that you relay the contents of this letter back to the original parties of interest. You are advised to direct **any and all** future contact and correspondences to our office." *See* Exhibit A.

19. Additionally, the validation correspondence included a provision which stated, "Our Client maintains their right to assert that no consent was ever given to automatically dial their telephone. However, in the even that your company believes consent was given, this correspondence completely revokes any consent our Client *may* have given, whether express or implied." *Id.*

3

20. On or around April 11, 2016, Defendant caused to be sent two correspondences acknowledging CLP's validation request. *See* attached Exhibit B are true and correct copies of Defendant's acknowledgment correspondence to CLP.

21. On or around April 19, 2016 and April 20, 2016, Defendant caused to be sent two correspondences providing validation of the subject consumer debts. *See* attached Exhibit C are true and correct copies of Defendant's validation correspondences.

22. Each validation correspondence included a paragraph which stated, "Please be advised that it is our intention to proceed with collection activity after the 10 day period. We urge you to give this letter your prompt attention and to reply without delay. If you have any new or additional information that you wish to bring to our attention, please do so at this time." *See* Exhibit C.

23. On May 2, 2016, less than 10 days after Defendant sent the validation correspondences, CLP caused to be sent to Defendant a correspondence stating that it continued to represent Plaintiff regarding the subject consumer debts. *See* attached Exhibit D is a true and correct copy of the continuing letter of representation correspondence.

24. The continuing letter of representation correspondence contained a paragraph which stated, "**However, please note that we continue to represent our Client in reference to ALL collection matters against her by MiraMed Revenue Group.** We renew our instruction that your company cease any and all direct communication with our Client. You are instructed to direct any and all correspondences and questions through CLP." *See* Exhibit D.

25. The continuing letter of representation correspondence was received by Defendant the same day that it was sent. *See* attached Exhibit E is a true and correct copy of a fax confirmation showing receipt by Defendant.

26. Following Defendant's receipt of CLP's continuing letter of representation, it has continued to directly contact Plaintiff through collection calls to her cellular phone. *See* attached Exhibit F is a true and correct copy of a screenshot from Plaintiff's cellular phone.

27. Defendant has made multiple calls to Plaintiff after May 2, 2016, seeking payment on the subject consumer debts. On at least one of the calls, Defendant left a prerecorded message on Plaintiff's voicemail.

28. Faced with the realization that Defendant would not cease its collection actions towards her despite multiple requests to do so, Plaintiff authorized CLP to bring the instant proceedings.

29. Plaintiff has incurred costs and expenses consulting with her attorneys as a result of Defendant's collection actions.

30. Plaintiff has suffered financial loss as a result of Defendant's collection actions.

31. Plaintiff has been unfairly harassed by Defendant's collection actions.

### COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

32. Plaintiff repeats and realleges paragraphs 1 through 31 as though fully set forth herein.

33. The FDCPA states:

> "Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney with respect to such debt, and has knowledge of, or can readily ascertain such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer." 15 U.S.C. §1692c(a)(2).

> "A debt collector may not engage in any conduct the natural consequence is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d.

> "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692f.

34. Defendant violated 15 U.S.C. §§1692c(a)(2), d, and f through its debt collection actions when it continued to contact Plaintiff directly, despite actual knowledge that she was represented by an attorney. CLP's faxed correspondence to Defendant on March 22, 2016 was sent in order to inform that Plaintiff was represented by counsel. This correspondence was not exclusively a validation request. It included explicit instructions that Defendant not directly contact Plaintiff. In fact, the correspondence referenced the very statute that is the subject of this lawsuit.

35. After reviewing CLP's correspondence, Defendant responded by sending validation of the subject consumer debts and a notice that it would continue collection activity. Although not required to, CLP renewed its explicit instructions to Defendant not to contact Plaintiff via the May 2, 2016 correspondence. For the second time, CLP made Defendant aware of its representation of Plaintiff.

36. As an experienced and sophisticated debt collector, Defendant should have immediately ceased all direct communications with Plaintiff when it received the first correspondence from CLP. Plaintiff specifically contemplated that she would not be able to pay her debts for an extended period of time and wanted to be globally represented by CLP in relation to Defendant.

37. Rather than deal exclusively with CLP, Defendant has attempted to circumvent the involvement of Plaintiff's counsel and continue to collect on the subject consumer debts directly from an unsophisticated and downtrodden consumer. Defendant knows that it is more likely to gain payment on the subject consumer debts if it deals with Plaintiff directly.

38. The above conduct by Defendant was harassing and unfair. As plead in paragraphs 28 through 31, Plaintiff was harmed by Defendant's illegal collection actions.

WHEREFORE, Plaintiff, ANNA SCHIEWE, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c. Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

39. Plaintiff repeats and realleges paragraphs 1 through 38 as though fully set forth herein.

40. The TCPA prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent. 47 U.S.C. § 227(b)(1)(iii). The TCPA defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).

41. Upon information and belief, Defendant used an ATDS in connection with its debt collection activity towards Plaintiff. The prerecorded messages left by Defendant on Plaintiff's voicemail are indicative of the variety left by an ATDS.

42. Defendant violated the TCPA by placing phone calls to Plaintiff's cellular phone using an ATDS without Plaintiff's consent.

43. Any consent Plaintiff *may* have given to either Defendant or Northwestern was explicitly revoked by CLP's correspondences.

44. Pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff for at least $500.00 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violation of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff, ANNA SCHIEWE, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Award Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c. Awarding Plaintiff costs and reasonable attorney fees; and

d. Awarding any other relief as this Honorable Court deems just and appropriate

Dated: May 22, 2016                            Respectfully Submitted,

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
David S. Klain, Esq. #66305
Counsel for Plaintiff
Admitted in the Northern District of Illinois
Consumer Law Partners, LLC
435 N. Michigan Ave., Suite 1609
Chicago, Illinois 60611
(267) 422-1000 (phone)
(267) 422-2000 (fax)
nate.v@consumerlawpartners.com
davidklain@aol.com